# EXHIBIT 9



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Baltimore Field Office

City Crescent Building
10 South Howard St., 3rd Floor
Baltimore, MD 21201
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Baltimore Status Line: (866) 408-8075
Baltimore Direct Dial: (410) 209-2237
TTY (410) 962-6065
FAX (410) 962-4270

EEOC Charge No.: 531-2009-01719

Therol Stathos
9627 Washington Ave.
Laurel, MD  20723                                            Charging Party

Northrop Grumman
2691 Technology Drive
Annapolis Junction, MD  20701                                Respondent

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, on behalf of the Commission, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended, hereinafter referred to as ("Title VII"), which is inclusive of the Pregnancy Discrimination Act. All requirements for coverage have been met.

Charging Party alleges that after disclosing her pregnancy, her supervisor refused to allow her to deploy on flights and refused to seek a medical waiver that would allow her to fly on military flights out of concern for the welfare of her unborn child. Charging Party further alleges that Respondent informed her she was being discharged because her pregnancy prevented her from performing her job on or around May 21, 2009 but later withdrew the discharge. To refute the discharge, Charging Party stated she voluntarily provided a physician's note stating she could fly for purposes of her job, and that Respondent required her to obtain a second physician's note using inaccurate and exaggerated job duties. Charging Party also alleges that as a result of the exaggerated job duties her physician placed restrictions on her for the duration of her pregnancy, and that after receiving the restrictions, Respondent required her to undergo the reasonable accommodation process, denied the accommodation of no deployments for the remaining two and a half months of her pregnancy, and forced her to take involuntary, unpaid leave for the rest of her pregnancy.

Respondent denies Charging Party's allegations in her Charge of Discrimination and maintains that the government's customer regulations prohibit pregnant females from flying.

The record reveals that Charging Party began work with Respondent on or around July 7, 2008 as a radar signals processing analyst. In December 2009, Charging Party informed her supervisor, Toby Plummer, of her pregnancy. On or around January 13, 2009, Charging Party

Determination Continued
EEOC Charge No.: 531-2009-01719
Page 2

informed Plummer test results revealed she had miscarried, to which he responded that she needed to provide a year's notice before becoming pregnant again. On or around February 6, 2009, Charging Party informed Plummer that the test results were incorrect and she was indeed pregnant. Although Charging Party requested that Plummer seek a medical waiver for military flights, which is the procedure under OPNAVIST, United States Naval Policy, 8.3.2.8, and that she continue flying on non-military flights, for which no waiver is required, Plummer refused, citing concerns over the welfare of the unborn child, and Charging Party worked exclusively in the office performing other job duties. Charging Party filed a Charge on May 26, 2009. Respondent was served notice of the Charge on June 8, 2009.

The documentary evidence shows that on or around May 28, 2009, Charging Party provided Respondent a physician's note stating that she was a healthy pregnant woman and could fly for purposes of her job. Respondent subsequently required Charging Party to obtain a second physician's clearance based on a revised job description that included responsibilities such as flying above 10,000 feet in unpressurized cabins, deployments to locations with no running water, hot meals, substandard housing, minimal medical and dental support for up to 90 days, and lifting up to 50 pounds. Charging Party disputed Respondent's characterization of the job as more dangerous than it actually was to no avail; for example, Charging Party had never flown above 10,000 feet or in unpressurized aircraft in her previous deployments. In response to the revised job description, on June 23, 2009, Charging Party's physician issued a note stating that Charging Party was unable to deploy or lift 50 pounds while pregnant.

The record reveals that Respondent then required Charging Party to undergo its reasonable accommodation procedure, requesting the accommodation of no deployment until her due date, September 20, 2009, and no lifting greater than 50 pounds. On July 28, 2009, Charging Party submitted her request that Respondent continue to accommodate her by not deploying her until six weeks after her September 20, 2009 due date. On July 31, 2009, the Reasonable Accommodation Committee convened and determined it could not grant Charging Party's request to not be deployed for the remaining eight weeks of her pregnancy, despite the fact that Respondent had not deployed her since she revealed her pregnancy. Effective August 3, 2009, Charging Party was placed on an involuntary, unpaid medical leave of absence.

The evidence also reveals that Charging Party's supervisor made negative and disparaging comments about Charging Party's pregnancy.

Based on an analysis of documentary and testimonial evidence obtained through the course of the investigation, I have determined there is reasonable cause to believe Respondent discriminated against Charging Party by subjecting her to unequal terms and conditions, declaring her unable to fly due to concerns pertaining to the health of the fetus, refusing to seek a waiver to permit her to fly on governmental flights, subjecting her to the reasonable accommodation process after not deploying her for several months, and placing her on involuntary unpaid leave because of her sex (female/pregnancy) in violation of Title VII, and in retaliation for filing a Charge with the Commission.


Determination Continued
EEOC Charge No.: 531-2009-01719
Page 3

This Determination is final. Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission can seek an amount inclusive of the applicable cap to your organization for compensatory and/or punitive damage; and actual monetary costs incurred by the Charging Party and aggrieved individuals, if any. A commission representative will prepare and monitor an actual dollar amount to include accruing wage losses and attendant benefits, with interest to date, any appropriate front pay; and, if appropriate, attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If any offer has not previously been submitted, Respondent is requested to accept, reject or submit a counteroffer to the enclosed conciliation agreement concerning Charging Party and any additional aggrieved individuals and do so within fifteen (15) days of the receipt of this letter.

The confidentiality provisions of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

ON BEHALF OF THE COMMISSION:

SEP 20 2011
Date

Gerald S. Kiel
Director